IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.                                                                                        CR No. 09-2740 MCA

**ERIKA DENISE GARCIA,**

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Erika Denise Garcia's *Motion in Limine* [Doc. 37], filed November 24, 2009; *Sealed Motion in Limine* [Doc. 50], filed December 8, 2009; *Motion in Limine* [Doc. 56], filed December 9, 2009; *Motion to Exclude Co-Conspirator Statements* [Doc. 58], filed December 10, 2009; and *Notice of Opposition to Government's Intention to Introduce Rule 404(b) Evidence* [Doc. 51], filed December 8, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court makes the following rulings.

**I. BACKGROUND**

On September 16, 2009, Defendant Erika Denise Garcia was charged in a 9-count indictment with making false or fictitious statements to federally licensed firearms dealers, in violation of 18 §§ 922(a)(6) and 924(a)(1)(A). The indictment followed a criminal complaint alleging that firearms that Ms. Garcia had purchased using a false address were discovered in Mexico by the Mexican federal police and Mexican army personnel. The

government's theory of the case is that Ms. Garcia was merely a "straw" buyer of the weapons and not the actual purchaser. The government superseded the indictment on December 10, 2009 to add a tenth count and also to charge each count under § 924(a)(1)(A) (thereby eliminating all reference to 18 U.S.C. § 922(a)(6)).

## II. ANALYSIS

### A.     *Motion in Limine* [Doc. 37]

On November 24, 2009, Ms. Garcia filed her first *Motion in Limine*, seeking to exclude at trial evidence that the firearms she purchased were seized by Mexican authorities in connection with their investigations of drug cartels. [Doc. 37 at 1]. She contends that out-of-court statements that Mexican authorities discovered the weapons as part of an investigation into drug-cartel activity is testimonial and, as such, their admission would violate her Sixth Amendment right to confront witnesses against her. [Id. at 2]. In fact, Ms. Garcia expressly relies on Crawford v. Washington, 541 U.S. 36, 51-52 (2004) when she states that

> *[o]ut-of-court statements of Mexican authorities* as to how they came into possession of the firearms, i.e., as part of criminal investigations into the activities of drug cartels, offered by the government at trial through ATF agents in support of its straw purchaser theory, are clearly testimonial hearsay, and their admission would violate Ms. Garcia's Sixth Amendment right to confront the witnesses against her.

[Id. at 2 (emphasis added)].

The government does not oppose this motion and, in fact, has expressly requested that the Court grant it on the ground that the government does not intend to introduce evidence

2

regarding the circumstances of the gun seizures in Mexico. The government does, however, intend to introduce evidence of the fact that the guns were found in Mexico, which the government maintains is relevant to whether Ms. Garcia was the actual purchaser or a straw purchaser; evidence that some guns were found in Mexico, says the government, supports the theory that Ms. Garcia was buying weapons on behalf of other people. There is nothing in the record to indicate that Ms. Garcia takes issue with the government's introducing evidence of the fact that some of the weapons were found in Mexico. Accordingly, the Court will grant Ms. Garcia's first *Motion in Limine* and exclude evidence regarding the circumstances of the gun seizures in Mexico, as well as out-of-court statements by Mexican authorities that they discovered the weapons as part of an investigation into drug-cartel activity.

## B. *Sealed Motion in Limine* [Doc. 50]

On December 8, 2009, Ms. Garcia filed an ex parte *Sealed Motion in Limine*, in which she seeks to prevent the admission of evidence that her brother and sister-in-law are being investigated for also making false statements in connection with the purchase of firearms. [Doc. 50 at 1]. She argues that such evidence is substantially more prejudicial than probative because the jury might believe that, if her family is under criminal investigation, Ms. Garcia must also be guilty. She also asserts that evidence relating to her brother and sister-in-law is likely to mislead and confuse the jury by causing them to "think that they need to consider her family being under investigation in their deliberations as to Ms. Garcia's own guilt or innocence." [Id. at 2]. The government has asked the Court to take "a wait-and-see approach

and defer ruling on the motion pending the outcome of the evidence." [Doc. 57 at 1]. The government represents that it does not intend to introduce the objected-to evidence in its case in chief, but argues that it "would certainly be entitled to walk straight through" any door Ms. Garcia's witnesses may open while on the stand. [Id.].

The Court will grant Ms. Garcia's *Sealed Motion in Limine*. However, should the government believe that the door has been opened to the introduction of the evidence in question, counsel for the government should ask to approach the bench and seek a ruling on this matter outside the presence of the jury.

### C.    *Motion in Limine* [Doc. 56]

Notwithstanding the government's assurance in response to Ms. Garcia's first *Motion in Limine* that it "does not intend to introduce evidence regarding the circumstances of the gun seizures in Mexico[,]" Doc. 40 at 1, the government has tendered as an expert Special Agent Jose Ballesteros of the United States Bureau of Alcohol, Tobacco and Explosives. SA Ballesteros was initially disclosed on November 24, 2009, through the *United States' Notice of Expert Witness Testimony* [Doc. 36]. On November 27, 2009 the government amended its notice, but the substance of the document (SA Ballesteros' credentials and his expected testimony) remained largely the same.

The government intends to offer SA Ballesteros to give expert testimony as to the practice of Mexican drug-trafficking organizations (DTOs) to use straw buyers in the United States to purchase firearms in this country and then provide them to DTOs in Mexico. SA Ballesteros would testify that (1) Mexican DTOs commonly employ straw buyers because

the sale of guns is so highly regulated in Mexico; (2) straw buyers are usually criminally clean and considered by the DTOs to be trustworthy; and (3) firearms including but not limited to Glocks and .50 caliber rifles (the types of weapons Ms. Garcia is charged with purchasing here) are the most sought-after weapons of the DTOs, as well as the most commonly seized by the Mexican authorities. SA Ballesteros would testify that Ms. Garcia's actions are consistent with those of a straw buyer. [See generally Doc. 38].

On December 9, 2009, Ms. Garcia filed a motion to exclude SA Ballesteros' testimony on the ground that it is irrelevant because in response to her first motion in limine, "the [g]overnment . . . disclaimed any intent to connect the firearms at issue here to the activities of Mexican drug cartels. . . ." [Doc. 56 at 2]. She also argues that SA Ballesteros' proposed testimony is substantially more prejudicial than probative because any suggestion that she is connected to Mexican drug cartels or DTOs is likely to provoke "a strong emotional response in the jury," particularly when that jury is sitting in the southern region of a border state. [Id. at 2-3]. The government responds that (1) it has agreed not to introduce the out-of-court statements of Mexican authorities of which Ms. Garcia had complained in her first motion in limine; (2) SA Ballesteros and an overview of his anticipated testimony were disclosed well before Ms. Garcia's late-filed motion to exclude; and (3) the probative value of SA Ballesteros' testimony is not significantly outweighed by its potential to prejudice Ms. Garcia. [See generally Doc. 59].

Should the Court accept SA Ballesteros as an expert, he will be permitted to testify that, in the firearms context, a straw purchaser is someone who buys firearms for another

person, either because the true purchaser is a prohibited possessor of firearms, or because the true purchaser wants his or her identity hidden.

SA Ballesteros will also be permitted to testify that firearms laws in Mexico are more restrictive than the firearms laws in the United States and, specifically, that all firearms in Mexico are controlled by the Mexican army.  He may testify that civilians in Mexico can possess limited types of guns, but even then, the qualification and registration processes are quite lengthy and expensive.  He may explain that, in contrast, firearms laws in the United States, which is one of the largest suppliers of firearms in the world, are nowhere nearly so restrictive.  Thus, the United States is known as a source country for firearms and Mexico is known as a demand country.  He may testify to the value of the guns.  Finally, SA Ballesteros may testify that guns not available in Mexico are procured by means of using straw purchasers in the United States and other places.

SA Ballesteros will not, however, be allowed to testify as to his opinion that, based on his review of reports and documents in this case, Ms. Garcia's purchases and attempted purchases of firearms are consistent with straw purchasing.  In particular, the Court will not permit SA Ballesteros' trial testimony to take the form of a lengthy narrative statement of a typical firearms straw purchase, followed by an opinion that Ms. Garcia's activities in this case fit the pattern or profile of such conduct.  Instead, SA Ballesteros must provide "brief, crisp answers to the Government's questions about several discrete topics" which are "beyond the ken of the average juror."  United States v. Tapia-Ortiz, 23 F.3d 738, 740-741 (2d Cir. 1994).

SA Ballesteros will also be permitted to testify to the significance of the guns in question having been found in Mexico, given that Mexico regulates guns far more strictly than the United States does, and that the United States is considered a supply country and Mexico a demand country for the types of firearms Ms. Garcia purchased.  He additionally will be allowed to testify generally as to the demand in Mexico for the types of firearms that Ms. Garcia purchased here, although he will not be permitted to mention or speak about Mexican drug cartels or DTOs.

The Court analogizes the present situation to one where the government might offer expert testimony on the structure of drug-trafficking organizations during the prosecution of a defendant for possession with intent to distribute drugs.  In neither case is the proffered testimony probative of matters properly before the Court.  For example, in a trial for possession with intent to distribute drugs, if the defendant is not also charged with conspiracy, testimony about the structure of drug trafficking organizations violates Federal Rules of Evidence 401 and 403 because "an expert providing testimony about the structure of drug trafficking organizations attributes knowledge to the defendant by attempting to connect him to an international drug conspiracy and thus implies that the defendant participated in a large-scale operation."  United States v. Pineda-Torres, 287 F.3d 860, 865 (9th Cir. 2002).  The situation is similar here, where the government, which must prove that Ms. Garcia made false statements in the acquisition of the charged firearms, has proffered no *direct* evidence associating her with Mexican drug cartels or DTOs.  Yet the government would offer SA Ballesteros to testify as to the practices and operations of those criminal

organizations. The Court concludes that, under the circumstances, evidence of Mexican drug cartels and/or DTOs would be substantially more prejudicial than probative.

On the other hand, some testimony as to the significance of the fact that the guns here were discovered in Mexico, as well as the significance of the number and types of weapons Ms. Garcia bought, clearly is needed to provide context for the straw-purchaser theory. But there must be a balance, and SA Ballesteros' testimony will not be excluded in its entirety because he possesses specialized knowledge of international gun movement that will be of assistance to the jury. See Fed.R.Evid. 702 (allowing for the admission of specialized knowledge that will "assist the trier of fact to understand the evidence or to determine a fact in issue."). Expert testimony on the issues of (1) straw purchasing; (2) the significance of the number and types of firearms purchased by Ms. Garcia; (3) the fact that the United States is considered a source country and Mexico a demand country for the sort of firearms purchased by Ms. Garcia; and (4) the fact that the weapons were recovered in Mexico will be helpful to the jury's understanding as to why Ms. Garcia may have made false statements on the forms she completed when buying the weapons. Again, however, SA Ballesteros will not be permitted to testify that Ms. Garcia was, in fact, a straw purchaser. Nor will he be permitted to mention Mexican drug cartels or DTOs.

As with any expert opinion, SA Ballesteros' testimony is not binding, and the jurors will be provided with a stock instruction reminding them that they may disregard an expert opinion entirely if they should decide that it is not based upon sufficient education and experience, or if they should conclude that the reasons given in support of the opinion are not

sound, or that the opinion is outweighed by other evidence.  Ms. Garcia's *Motion in Limine* will be granted in part and denied in part.

### D.     *Motion to Exclude Co-Conspirator Statements* **[Doc. 58]**

Through this motion, Ms. Garcia seeks to exclude what she terms hearsay statements made by (1) an unidentified woman who accompanied her for the purchase of a firearm on November 29, 2007 (this attempted purchase being the subject of Count 8 of the superseding indictment); and (2) three men who accompanied her to a gun show on March 2, 2008 (this attempted purchase being the subject of Count 10 of the superseding indictment).  Ms. Garcia states that the government intends to introduce, through the firearms dealer with whom she dealt on November 29, 2007, the unidentified woman's statement, "That's the one I want," as Ms. Garcia handed her a gun.  She contends that the government similarly intends to introduce, through a vendor at the March 2, 2008 gun show, testimony that the vendor overheard (or was told by a police officer who overheard) the three accompanying men tell Ms. Garcia which firearms to buy.  Ms. Garcia first argues that these statements amount to inadmissible hearsay.  She also contends that the only way they could possibly come in would be pursuant to Fed.R.Evid. 801(d)(2)(E) as statements of co-conspirators, but that there is no independent evidence of a conspiracy here.

In this case, the Court need not determine whether the statements are admissible under Rule 801(d)(2)(E), because the Court concludes that the statements in question are admissible for the purpose of showing their effect on the listener, a non-hearsay use.  The jury will be provided a limiting instruction for use when considering these statements.

By way of example, the Court notes <u>United States v. Lambinus</u>, 747 F.2d 592, 597 (10th Cir. 1984). In <u>Lambinus</u>, where the defendant was charged with the unauthorized use, acquisition and possession of food stamps, the Tenth Circuit held that a conversation wherein an undercover police officer offered to sell food stamps to the defendant was admissible as a non-hearsay statement that was proper to show its effect on the listener. The statement was admissible not to prove that the undercover officer offered to sell the food stamps but, instead, to show its effect on the defendant and his knowledge of the illegality of his food-stamp transactions. <u>United States v. Lambinus</u>, 747 F.2d 592, 597 (10th Cir. 1984).

In this case, the statement by the unidentified woman—"That's the one I want"—is admissible for the purpose of showing its effect on the listener, the firearms dealer, who ultimately refused to sell a weapon to Ms. Garcia because he believed she was not the actual buyer. The same is true of the second incident because statements by the men with Ms. Garcia, instructing her on which guns to buy, are admissible to show their effect on the gun-show vendor, who, like the dealer from November 29, 2007, opted not to sell to Ms. Garcia because he believed that she was not the actual purchaser of the firearms in question. For these reasons, Ms. Garcia's *Motion to Exclude Co-Conspirator Statements* will be denied.

### **E.** *Notice of Opposition to Government's Intention to Introduce Rule 404(b) Evidence* **[Doc. 51**

The government has provided notice of its intent to introduce, pursuant to Rule 404(b), evidence of two uncharged but similar acts wherein (1) on March 7, 2008, Ms. Garcia purchased 6 AK-47s from a dealer in Arizona, certifying on Alcohol, Tobacco and

Firearms Form 4473 that she was the actual buyer, and (2) on March 21, 2008, Ms. Garcia, accompanied by an unidentified male, unsuccessfully attempted to purchase a Glock handgun from Custom Cartridge Company, the store from which she bought the weapons identified in certain counts of the superseding indictment.  The government contends that evidence of these prior uncharged acts is relevant for the purpose of showing that Ms. Garcia knowingly made false statements in purchasing the charged weapons, and that it was her motive, intent, and plan to buy guns for other people. [Doc. 39 at 2, 5].

Ms. Garcia opposes the introduction of this evidence.  She argues that this evidence is  (1) substantially more prejudicial than probative; (2) likely to be misled the jury into thinking that because she allegedly crossed state lines to buy weapons she must be guilty here; and (3) cumulative and largely unnecessary, given that she is actually charged with multiple similar offenses. [Doc. 51 at 2].

Under Fed.R.Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b).  Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident. See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988). This test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).  Additionally, "[t]he list of proper purposes is illustrative, not exhaustive, and Rule 404(b) is considered to be 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition.'" United States v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001) (emphasis in original) (*quoting* United States v. Van Metre, 150 F.3d 339, 349 (4th Cir.1998)).

The Court concludes that evidence of the two uncharged acts here, which occurred during the time covered by the superseding indictment and took place two weeks apart, is relevant for the proper purposes of showing a plan and common scheme and Ms. Garcia's intent to commit the crimes charged.  From the fact that Ms. Garcia bought and attempted to buy numerous firearms from different stores within a relatively short period of time, the jury could reasonably infer that she had a plan and was acting as part of a scheme to purchase weapons on behalf of other people, which is relevant to the government's contention that she was falsely representing herself as the actual buyer when, in fact, she was not.  See, e.g., United States v. Burris, 60 F.3d 825 (4th Cir. 1995) (unpublished opinion) (in prosecution for making false statements to federally licensed firearms dealer, it was not error to admit

under Rule 404(b) evidence that defendant was involved in previous straw purchases, because that evidence tended to show a common scheme, as well as the defendant's intent to commit the crime).

Additionally, at the Call of the Calendar, the government pointed out that, on March 3, 2008 approximately three months after the acts charged in Count 7 of the superseding indictment, and one day after those charged in Count 9, Ms. Garcia obtained a new driver's license, which reflected her true address. Four days later, on March 7, 2008, Ms. Garcia purchased 6 AK-47s in Arizona and 18 days later, on March 21, 2008, sought to purchase a Glock in Las Cruces, New Mexico.

That Ms. Garcia bought six AK-47s and inquired into the purchase of a Glock shortly after obtaining the new driver's license is relevant to show that Ms. Garcia knew that, prior to obtaining that driver's license, she had been making false statements on Alcohol, Tobacco and Firearms Form 4473. To be sure, after supplying a false address and being refused the firearms she attempted to acquire on November 29, 2007 and March 2, 2008, Ms. Garcia renewed her driver's license with a valid address and began purchasing and attempting to purchase guns once again. In addition to being probative of knowledge, Ms. Garcia's actions on March 7, 2008 and March 21, 2008 are probative of her plan, scheme, and intent to purchase firearms on behalf of others. As the government offers this evidence for proper purposes, see Fed.R.Evid. 404(b), it will be permitted to introduce the "other act" evidence that is the subject of its *Notice.*

Still, the Court's ruling on this issue is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial. Therefore, counsel must advise both the Court and opposing counsel if and when he is ready to introduce this topic to the jury so that counsel for Ms. Garcia has the opportunity to renew her objection and the Court has the opportunity to provide a timely limiting instruction.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant Erika Denise Garcia's *Motion in Limine* [Doc. 37] is **GRANTED** inasmuch as the government shall not introduce at trial out-of-court statements of Mexican authorities as to how they came into possession of the charged firearms;

**IT IS FURTHER ORDERED** that Ms. Garcia's *Sealed Motion in Limine* [Doc. 50] is **GRANTED;**

**IT IS FURTHER ORDERED** that Ms. Garcia's *Motion in Limine* [Doc. 56] is **GRANTED IN PART** and **DENIED IN PART**, as explained more fully herein;

**IT IS FURTHER ORDERED** that Ms. Garcia's *Motion to Exclude Co-Conspirator Statements* [Doc. 58] is **DENIED**;

**IT IS FURTHER ORDERED** that the government shall be permitted to introduce Rule 404(b) evidence, as described more fully herein, and pursuant to the limitations set forth above;

**IT IS FURTHER ORDERED** that each pretrial evidentiary ruling set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context

should arise during the trial.

**SO ORDERED** this 15th day of December, 2009, in Las Cruces, New Mexico.

                                                    **M. CHRISTINA ARMIJO**
                                                    United States District Judge